**ADVENT TRUST COMPANY, as Independent Executor of the Estate of Noble C. Ginther, Deceased, et al., Appellants,**

v.

**Elton M. HYDER, III, Independent Executor of the Estate of Merle M. Rowan, et al., Appellees.**

No. 04–98–00315–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 30, 1999.

Rehearing Overruled Dec. 27, 1999.

George M. Kirk, Jr., Kirk & Gottesman, L.L.P., Houston, Jeff Nobles, Smith, Nobles & Adams, P.C., Houston, Robert W. Higgason, Law Office of Robert W. Higgason, Houston, for Appellant.

David J. Beck, Joe W. Redden, Jr., Thomas E. Ganucheau, Linda K. McCloud, Anne M. Pike, Felicia Harris Kyle, Beck, Redden & Secrest, L.L.P., Houston, Barnet B. Skelton, Houston, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice.

## OPINION

Opinion by TOM RICKHOFF, Justice.

A group of working interest owners in certain oil and gas leases sued the estate of a former operator of the leases, seeking to recover losses they incurred in prior litigation involving a farmout agreement. The jury returned a verdict in favor of the working interest owners for $4,261,000 in actual damages and $20,000 in punitive damages. We conclude that the limitations period for this suit commenced when the working interest owners were served with the petition in the prior litigation. Because this suit was commenced more than four years after that date, we reverse the judgment in favor of the working interest owners and render judgment that they take nothing.

### Facts

In 1945, Noble Ginther and others entered into a joint operating agreement

(JOA), agreeing to cooperate in the development of oil and gas leases they owned in the Sarco Creek Field, located on the Carrie G. Wood Ranch in Goliad County. The operator and the working interest owners changed over the years. For purposes of this appeal, the relevant working interest owners were Noble Ginther, Conoco, and the Hyder–Rowan Group. Noble Ginther served as operator from 1972 until 1989.

The first oil well in the field was called Wood Well No. 1. It was originally completed to a depth between 4170 to 4180 feet. In 1961, the well was recompleted at 4050 feet. The well then produced from two formations (one formation at 4170–4180 feet and one formation at 4050 feet). It thus became a "dually completed" well. When the dual completion occurred, Ginther, Warren & Co. (GWC) was the operator under the JOA. The Ginther in GWC was Noble's brother, Wilbur; Noble Ginther did not have a role in GWC. In 1988, another well, Wood Well No. 11, was dually completed.

In 1989, Conoco entered into a farmout agreement with CPX, Inc. On Noble Ginther's recommendation, the other working interest owners entered into identical farmout agreements. The agreements granted CPX the right to drill one well. If this well was successfully completed, CPX would be assigned the working interest owners' right to its production. The agreements provided that CPX could not produce from existing formations that were producing on adjacent leases. Pursuant to the farmout agreements, CPX drilled its single well, Whitlow Well No. 1, to a depth of 4050 feet and found that the formation was depleted.

In July 1989, CPX sued Ginther, Conoco, and the Hyder–Rowan Group, asserting they failed to disclose that they had produced from the 4050–foot formation, that they represented that CPX could obtain the information it needed about their past and current production from records on file with the Texas Railroad Commission, and that, in fact, the proper filings had not been made with the Commission. CPX additionally filed an application with the Commission for a new field designation for Whitlow Well No. 1.

Also in July 1989, R.E. Keen, a petroleum engineer for Ginther, sent the working interest owners a letter on Noble Ginther's letterhead, stating that a "misunderstanding" had arisen regarding the farmout agreements and that CPX was "wrongfully claiming" damages from the working interest owners. Summarizing CPX's contentions, the letter stated, "Basically, CPX, Inc. is claiming we withheld information from them which is untrue." Levy Goodrich, one of the working interest owners, testified that he was present at a meeting in which R.E. Keen and Noble Ginther stated that there were no "unfiled forms with the Railroad Commission and nothing was true about [CPX's] allegations."

In September 1989, Ginther died, and Keen replaced him as operator. In January 1992, CPX filed a complaint with the Railroad Commission, asserting that the working interest owners had violated Commission reporting requirements and had engaged in illegal, commingled production.

The Hyder–Rowans and Keen were aligned in the Railroad Commission proceedings, although they were represented by separate counsel. The central issues before the Commission were whether Wood Wells No. 1 and No. 11 were producing from two formations, and, if so, whether the dual completion of these wells and the production from them had been properly reported. The Hyder–Rowans and Keen argued that the dual completion report for Wood Well No. 1 may have been filed in 1961 and lost or returned to GWC by the Commission (apparently, pre–1966 Commission records regarding the Sarco Creek Field were in a state of disarray). Alternatively, they argued that a dual completion report did not have to be filed under the circumstances existing in the Sarco Creek Field.

On August 12, 1992, Railroad Commission examiners issued a proposal for decision that rejected Keen's and the Hyder–Rowans' arguments. Largely adopting the examiners' findings and conclusions, the Railroad Commission determined that the operators of the Sarco Creek Field violated Commission rules by failing to file a dual completion report for Wood Wells No. 1 and No. 11 and by failing to separately account for the production from two formations at these wells in periodic reports to the Commission, and that production from Wood Wells No. 1 and No. 11 had been commingled in violation of Commission rules. The Commission referred the matter to the Attorney General to assess administrative penalties. Ginther's estate eventually paid a $10,000 penalty.

Following the Commission's decision, all of the working interest owners settled with CPX. The Hyder–Rowans surrendered their interest in the Sarco Creek Field to CPX, and Conoco paid CPX $1.9 million. In a separate settlement, Ginther's estate surrendered its interest in the field and also paid CPX $ 1.5 million.

On January 18, 1994, the Hyder–Rowans instituted this suit against Ginther's estate, seeking to recover the value of the surrendered interest in the field. At the time of trial, their live pleading included causes of action for negligence, negligent misrepresentation, fraud, breach of contract, and common-law indemnity. The Hyder–Rowans alleged that Ginther, as operator, was responsible for ensuring that required reports were filed with the Railroad Commission and that he negligently or fraudulently failed to file required dual-completion and production reports, thereby misrepresenting the nature and extent of gas in the Sarco Creek Field. In defense, Ginther's estate argued that all the Hyder–Rowans' claims were barred by limitations. The Hyder–Rowans countered that the discovery rule, fraudulent concealment, and equitable estoppel apply. In response to the discovery rule questions in the charge, the jury found that the Hyder–Rowans discovered their causes of action for negligence, negligent misrepresentation, fraud, and breach of contract on August 12, 1992, which was the day the Railroad Commission examiners issued their proposal for decision. The jury further found in favor of the Hyder–Rowans on all causes of action and awarded them $4,261,000 in actual damages and $20,000 in punitive damages. Advent Trust Company, successor independent executor of Ginther's estate, appeals the judgment entered on this verdict.

## Accrual of the Causes of Action

■ Generally, a cause of action accrues, and the limitations period begins running, when a wrongful act causes some legal injury, that is, an injury giving a cause of action by reason of its being an invasion of a right. *See S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996); *Houston Water-Works Co. v. Kennedy*, 70 Tex. 233, 8 S.W. 36, 37–38 (1888). This rule applies even if all the resulting damages have not yet occurred. *See S.V.*, 933 S.W.2d at 4. Accrual may be deferred, however, in two categories of cases. *See id.* at 4, 6. The first category consists of cases in which the nature of the injury is inherently undiscoverable and the evidence of injury is objectively verifiable. *See id.* at 6. In these cases, accrual is deferred until the plaintiff knows or in the exercise of reasonable diligence should know of the wrongful act and the resulting injury. This is known as the "discovery rule." *See id.* at 4. The second category consists of cases involving fraud. *See id.* at 4, 6. In these cases, accrual is deferred under a species of equitable estoppel known as fraudulent concealment. *See Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex.1983). The defendant is estopped from relying on the statute of limitations until the plaintiff learns of the right of action or should have learned of it through the exercise of reasonable diligence. *See Computer Assocs. Int'l, Inc. v. Altai*, 918 S.W.2d 453, 456 (Tex.1996); *Borderlon*, 661 S.W.2d at 908.

The Hyder–Rowans' negligence claims are governed by a two-year statute of limitations, and their breach of contract and fraud causes of action are governed by a four-year statute of limitations. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 16.003(a), 16.004(a)(3) (Vernon 1986 & Supp.1999); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex.1998); *Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 869 (Tex. App.—San Antonio 1997, no pet.). If the Hyder–Rowans' causes of action accrued on August 12, 1992, when the Railroad Commission examiners issued their proposal for decision, their suit was timely commenced on January 18, 1994.

## The Discovery Rule

### *Applicability of the Rule*

Advent argues that the Hyder–Rowans suffered a legal injury when Ginther committed the alleged breaches of duty, which was necessarily before Ginther's death in September 1989. Advent further argues that accrual was not deferred under the discovery rule because Ginther's alleged breaches of duty were not inherently undiscoverable. Advent relies on *HECI Exploration Co. v. Neel*, 982 S.W.2d 881 (Tex. 1998).

In *HECI*, the lessee of an oil and gas lease discovered that overproduction by the operator of an adjoining lease had damaged the lessee's reservoir. The lessee sued the adjoining operator, but did not inform the royalty interest owners about the damage. When the royalty interest owners learned about the prior suit, they sued the lessee, alleging the lessee breached its duty to notify them that they had a reason to sue the adjoining operator. The supreme court held that the discovery rule did not apply because damage to a reservoir from illegal production is not the type of injury that is inherently undiscoverable. *See HECI*, 982 S.W.2d at 886.

The court reasoned that royalty interest owners "cannot be oblivious" to the existence of a common reservoir, to other operators in the area, or to visible wells on neighboring properties. *See id.* The court also identified Railroad Commission records as potential sources of information about operations in a common reservoir. *See id.* at 886–87.[1] Applying this reasoning here, it seems unrealistic to expect the Hyder–Rowans to discover that wells have been dually completed simply by inspecting the property. There is nothing in the record to indicate that the dual completion of a well is as readily apparent as the existence of a well. Thus, the source of

---

1. Specifically, the court held:

 While *some* records of the Railroad Commission *in certain circumstances* may provide constructive notice, the records regarding illegal production … are not of that character *in the context of the Neels' claims against HECI*. Nevertheless, filings and other materials publicly available from the Railroad Commission are a ready source of information, and a cause of action for failure to provide that same information is not inherently undiscoverable. *As demonstrated in this case, the information that the Railroad Commission maintains regarding fields in which there is competing production indicates that injury to a common reservoir by an adjoining operator is not inherently undiscoverable.*

 *HECI*, 982 S.W.2d at 887 (emphasis added & citation & footnote omitted). We admit to being somewhat bewildered by this language. We have had limited exposure to oil and gas

 litigation. *See, e.g., TransAmerican Natural Gas Corp. v. Finkelstein*, 933 S.W.2d 591 (Tex. App.—San Antonio 1996, writ denied). But it has been sufficient for us to comprehend that this is an area in which the smartest and most aggressive can make a great deal of money from a less-knowledgeable class of royalty interest owners. How are royalty owners, the trust officers for minors, lawyers, and judges, who are not knowledgeable about the state of the Railroad Commission records, able to distinguish between production records that provide constructive notice and those that do not? Rather than bringing predictability and consistency to this area of the law, we fear that placing the onus on royalty owners to hire the experts necessary to investigate whether the Railroad Commission records reveal they are being cheated is inherently unfair and unworkable in the oil and gas business environment we have come to know.

damages in *HECI*, production at an adjoining lease, was arguably easier to notice. Moreover, until the Hyder–Rowans were made aware of the dual completion by CPX's suit, they had no reason to search the Railroad Commission's files to learn whether proper disclosures of the dual completion had been made.

Because the facts are distinguishable, we are not convinced that *HECI* precludes the Hyder–Rowans from relying on the discovery rule in this case. Ultimately, however, we need not decide this issue. As we are about to explain, even if the discovery rule applies, it would delay accrual only to July 1989—when the Hyder–Rowans were served in the CPX suit—a date more than four years before the Hyder–Rowans commenced this action.

### Accrual Date

■ Assuming the discovery rule applies, Advent argues that the Hyder–Rowans knew or should have known of their injury no later than July 1989, when they were served with CPX's petition. Advent relies on *Johnson & Higgins v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex.1998), and *Murphy v. Campbell*, 964 S.W.2d 265 (Tex.1997).

In *Kenneco*, the plaintiff's insurer denied coverage because the plaintiff's insurance broker failed to obtain the coverage requested by the plaintiff. The plaintiff initially sued only the insurer, and not the broker. The plaintiff later sought to recover from the broker, asserting that its claim against the broker did not accrue until the underlying coverage dispute was resolved. The supreme court disagreed, holding that a cause of action accrues when facts come into existence that authorize a claimant to seek a judicial remedy. *See Kenneco*, 962 S.W.2d at 514–15. Accordingly, the plaintiff's cause of action against the broker accrued on the date coverage was denied because all the facts required for a cause of action existed at that time. *See id.* at 515. The court noted that the plaintiff was harmed when coverage was denied, and "knew or should have

known at that time that [the broker] *might have been negligent.*" *Id.* (emphasis added).

In *Murphy*, the supreme court considered the application of the discovery rule to claims for accounting malpractice. The court determined that such a claim accrues no later than when the taxpayer receives a formal deficiency notice from the IRS. *See Murphy*, 964 S.W.2d at 271. After issuance of the deficiency notice, the taxpayer may challenge the IRS's position in tax court. The plaintiffs argued that the claim should not accrue until the tax court litigation is concluded, because only then does the IRS actually assess the tax due. The supreme court disagreed, holding that "under the discovery rule, such an action accrues, not when injury becomes certain, but when the claimant should know of his injury." *Id.*

CPX's petition is analogous to the denial of coverage in *Kenneco* and the deficiency notice in *Murphy*. When CPX served the Hyder–Rowans with its petition, it took the formal position that they were liable to CPX for damages, just as the IRS's deficiency notice represents its formal position that a taxpayer is liable for taxes and an insurer's denial of coverage represents its formal position that it is not liable to its insured. As in *Kenneco*, when CPX served its petition on the Hyder–Rowans, facts came into existence that authorized them to seek a judicial remedy. Based on the allegations in CPX's petition, the Hyder–Rowans should have known that Ginther might have acted negligently, fraudulently, or inconsistently with his responsibilities as operator by failing to file dual completion reports with the Railroad Commission. They could have pursued these allegations by cross-claiming against Ginther's estate in the CPX litigation. Admittedly, the Hyder–Rowans' injury was not certain when they received CPX's petition; CPX might not have prevailed on its claims against them. *Murphy* expressly states, however, that

certainty of the injury is not a prerequisite for accrual.

Not only are *Kenneco* and *Murphy* closely analogous to this case, they also exemplify the supreme court's efforts to confine the application of the discovery rule. We do not lightly conclude that we are in a better position than a jury to determine when a party should have discovered a cause of action. Nevertheless, we are bound by the higher court. Based on the binding authority of *Kenneco* and *Murphy* and the rationales supporting those decisions, we are constrained to hold that the Hyder–Rowans should have known of their claims against Ginther's estate no later than July 1989, when they were served with CPX's petition.[2]

### Fraud

The Hyder–Rowans contend that this case is distinguishable from *Kenneco* and *Murphy* because it involves fraud. They assert that Ginther assured them there was no basis for CPX's allegations and that all the required filings had been made. They claim they did not realize the required filings had not been made until the Railroad Commission examiners issued their proposal for decision.

### *Submission of the Issues*

A party who seeks to avoid the application of the statute of limitations on the basis of fraudulent concealment or equitable estoppel has the burden to plead and secure findings on the issues. *See Kenneco*, 962 S.W.2d at 515–16; *Autry v. Dearman*, 933 S.W.2d 182, 192 (Tex. App.—Houston [14th Dist.] 1996, writ denied). The elements of fraudulent concealment are: 1) an underlying tort; 2) the defendant's knowledge of the tort; 3) the defendant's use of deception to conceal the tort; and 4) the plaintiff's reasonable reliance on the deception. *See Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439

(Tex.App.—Fort Worth 1997, pet. denied). The elements of equitable estoppel are: 1) a false representation or concealment of material facts; 2) made with knowledge, actual or constructive, of those facts; 3) with the intention that it should be acted on; 4) to a party without knowledge or means of obtaining knowledge of the facts; 5) who detrimentally relies on the representations. *See Kenneco*, 962 S.W.2d at 515–16. A party asserting any form of equitable estoppel must have reasonably relied on the defendant's misrepresentations or concealment. *See Arabian Shield Dev. Co. v. Hunt*, 808 S.W.2d 577, 584 (Tex.App.—Dallas 1991, writ denied).

The Hyder–Rowans pled fraudulent concealment and equitable estoppel as an avoidance to the statutes of limitation. They argue that they also submitted these issues to the jury. They rely on Question 6 in the jury charge, which asked whether Ginther committed fraud. This question instructed the jury on the elements of the substantive, common-law tort of fraud: 1) a material misrepresentation; 2) the representation was false; 3) the representation was made with knowledge of its falsity or recklessly without any knowledge of the truth and as a positive assertion; 4) the representation was made with the intention that it should be acted on by the other party; and 5) the other party acted in reliance on the representation and thereby suffered injury. *See Gilmartin v. KVTV—Channel 13*, 985 S.W.2d 553, 558 (Tex.App.—San Antonio 1998, no pet.). Next, Question 7 asked the jurors, if they answered "yes" to Question 6, whether the fraud was a proximate cause of damages to the Hyder–Rowans. The charge then asked the jurors, if they answered "yes" to Question 7, what sum of money would compensate the Hyder–Rowans for their damages. The charge then asked, again only if they answered "yes" to Question 7,

---

**2.** We agree with the sentiment expressed in the concurring opinion. It appears that one or more of the parties involved in this case was involved in some mischief, and jurors are

in a better position than appellate judges to determine who was responsible for the mischief and when it should have been discovered.

"On what date do you find from a preponderance of the evidence that Plaintiffs discovered, or through the exercise of reasonable care and diligence should have discovered, the fraud of ... Ginther?" This same series of questions—the causation question, the damages question, and the discovery rule question—followed the questions on breach of contract, negligence, and negligent misrepresentation.

■ It is apparent from viewing the charge as a whole that the fraud question submitted to the jury involved the substantive tort of fraud, not fraudulent concealment or equitable estoppel as avoidances to the statute of limitations. It would not be appropriate to ask the jury causation and damages questions regarding a theory of avoidance; such questions appropriately apply only to a theory of liability.

■ Furthermore, the fraud instruction omits the critical element of the Hyder–Rowans' reasonable reliance (or lack of means of obtaining knowledge of the facts). *See Kenneco*, 962 S.W.2d at 515–16; *Arabian Shield Dev. Co.*, 808 S.W.2d at 584. The Hyder–Rowans suggest that Advent waived this omission by failing to object. They also argue that the evidence is sufficient to support this element. These arguments are misguided. The elements submitted to the jury were not necessarily referable to equitable estoppel or fraudulent concealment; they were equally referable to the tort of fraud. Therefore, Advent was not on notice of the possibility of a deemed finding on fraudulent concealment or equitable estoppel. *See Kenneco*, 962 S.W.2d at 516; *see also* Tex.R. Civ. P. 279. And Advent could not object to the omission of an element of fraudulent concealment or equitable estoppel because the instruction submitted was a correct instruction for the tort of fraud. *See Kenneco*, 962 S.W.2d at 516.

### Reasonable Reliance

Even if the charge had included a proper instruction on fraudulent concealment

or equitable estoppel, we believe the Hyder–Rowans cannot establish reasonable reliance as a matter of law. The Hyder–Rowans claim they relied on R.E. Keen's letter, which stated, "Basically, CPX, Inc. is claiming we withheld information from them which is untrue." Levy Goodrich also testified that he was present at a meeting in which R.E. Keen and Noble Ginther stated that there were no "unfiled forms" with the Railroad Commission and "nothing was true" in CPX's allegations. The Hyder–Rowans contend they were justified in relying on these statements because Ginther, as operator, was in a superior position to know whether the required forms had been filed.[3] This contention is not supported by the record.

■ The Hyder–Rowans were on notice, when they were served with CPX's petition, of the production from Wood Wells No. 1 and No. 11. At that time, they could have searched the Railroad Commission files themselves to learn what filings had been made. This information was not solely possessed by Ginther; it was publicly available. Indeed, the record reflects that the Hyder–Rowans actually took this step. Goodrich testified, "We looked at the records in the Railroad Commission and there was no record that we had completed in the 4050 sand." The Hyder–Rowans also hired their own attorneys and filed a separate closing statement in the Railroad Commission proceedings. The closing statement argued that either the dual completion reports were not required to be filed or they had been filed and lost. Thus, it is apparent that the Hyder–Rowans knew there was a litigable question regarding whether the proper filings had been made. The only thing they did not know was that their theories would be rejected by the Railroad Commission.

■ We conclude that the Hyder–Rowans failed to submit fraudulent concealment and equitable estoppel to the jury.

3. The Hyder–Rowans concede that Ginther did not owe them a fiduciary duty.

Therefore, these issues are waived. The Hyder–Rowans also failed to establish that they reasonably relied on Ginther's assurances that there was no basis for CPX's allegations and that all the required filings had been made.[4]

## Indemnity

What we have said thus far disposes of all the Hyder–Rowans' claims except their claim for common-law indemnity. We turn finally to determine whether that claim is time-barred as well.

 The parties agree that a two-year limitations period applies to indemnity claims. *See Powell v. Brantly Helicopter Corp.*, 396 F.Supp. 646, 652 (E.D.Tex. 1975); *Littlefield v. Scott*, 244 S.W. 824, 826 (Tex.Civ.App.-Beaumont 1922, writ ref'd). Such a claim accrues when the underlying litigation is settled or a judgment is rendered. *See W.R. Grace Co. v. Scotch Corp.*, 753 S.W.2d 743, 748 (Tex. App.—Austin 1988, writ denied), *disapproved on other grounds, Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492 (Tex.1991). Since the Hyder–Rowans settled with CPX in November 1992, the limitations period for their indemnity claim expired in November 1994. The Hyder–Rowans did not include an indemnity claim in their pleadings until January 1997, when they filed their third amended petition. Therefore, the indemnity claim is time-barred.

 The Hyder–Rowans argue that although they did not expressly include an indemnity claim in their pleadings until 1997, their original petition, filed in January 1994, was "essentially a claim for indemnity." They contend that by amending their petition to include an indemnity claim, they merely conformed their pleadings to the parties' understanding concerning the underlying nature of the suit. This contention is not supported by the record. In their original petition, the Hyder–Rowans did not label their claims, but the petition seems to allege fraud, negligence, and breach of contract. There is nothing in the record to indicate that the parties understood the petition to encompass an indemnity claim. If there were any doubt regarding what claims the Hyder–Rowans were pursuing, the second amended original petition, filed in March 1995, expressly labels the claims as fraud, negligence, and breach of contract. In November 1996, Advent filed a motion for summary judgment on the ground of limitations. Thereafter, in January 1997, the Hyder–Rowans filed their third amended original petition, including for the first time an indemnity claim.

The Hyder–Rowans' argument is similar to the argument made in *Cooke v. Maxam Tool and Supply, Inc.*, 854 S.W.2d 136 (Tex.App.-Houston [14th Dist.] 1993, writ denied). In that case, the plaintiffs filed an original petition alleging negligence more than two years but less than four years after the events giving rise to the suit. More than four years after the events giving rise to the suit, they amended their petition to include contract and other claims. The negligence claim was untimely because it was not filed within two years, and the contract claim was untimely because it was not filed within four years. *See Cooke*, 854 S.W.2d at 141. The

---

4. We have confined our discussion of these assurances to the fraudulent concealment and equitable estoppel grounds of avoidance because that is how they were confined in the Hyder–Rowans' pleadings. The Hyder–Rowans did not rely on the assurances to support their fraud cause of action. Instead, that cause of action was based on the same allegations that supported their negligence, negligent misrepresentation, and breach of contract theories, *i.e.*, Ginther's failure to file required reports with the Railroad Commission. On appeal, however, the parties indicate that Ginther's assurances that the required filings had been made form the basis for the fraud cause of action as well. To the extent the fraud cause of action is based on these assurances, the Hyder–Rowans were on notice of facts that would cause a reasonable person to investigate when the assurances were made. Hence, accrual of the fraud cause of action was not deferred. *See Wise v. Anderson*, 163 Tex. 608, 611, 359 S.W.2d 876, 879 (1962).

plaintiffs argued that the contract claim should relate back to the filing of the original petition for negligence because the original petition was filed within four years and contained enough facts to support the contract claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.068 (Vernon 1997). The court rejected this argument because it required a "much too broad interpretation of [section 16.068] and of our pleading practice." *Cooke*, 854 S.W.2d at 141. Although the court agreed that a single transaction can give rise to different claims, it did not agree that "a mere recitation of the facts will suffice to toll the running of limitations." *Id.* The same reasoning applies here. The Hyder–Rowans' indemnity claim is time-barred because they did not file a petition alleging indemnity until more than two years after they settled with CPX.

## Conclusion

Having concluded that all the Hyder–Rowans' claims are time-barred, we reverse the judgment in their favor and render judgment that they take nothing in this suit.[5]

Concurring opinion by: PHIL HARDBERGER, Chief Justice, joined by Justice LÓPEZ

HARDBERGER, Chief Justice, concurring.

The majority reaches the result it must under the holdings in *Kenneco* and *Murphy*. Therefore, I reluctantly join the opinion.

The constraints placed on the application of the discovery rule by these two holdings however cause us to disregard a specific jury finding on a matter that the jury was in the best position to decide.

The discovery rule is intended to defer the accrual of a cause of action until the plaintiff knows or in the exercise of reasonable diligence should know of the wrongful act and the resulting injury. In this case, the jury was asked to determine the date on which the Hyder–Rowans discovered or should have discovered the breach of the Joint Operating Agreement. The jury answered with a date that would have avoided the limitations bar. The submission of this issue was proper, and there was evidence to support the jury's answer.

As the Texas Supreme Court acknowledged in *Murphy*, the date a particular person becomes charged with knowledge in most discovery rule cases depends on the circumstances. 964 S.W.2d at 271. The determination of knowledge depends heavily on factual circumstances, and what a reasonable person should know and do based on those circumstances. A jury is more capable than appellate judges in determining the reasonable date for discovery. In this case, the Hyder–Rowans' position is that discovery of the defendant's wrongdoing was delayed by the assurances of the defendant that everything had been done properly. That may or may not be so. The validity of this excuse requires a factual determination involving credibility, common sense, and the relationship of the parties to each other. This analysis will vary from case to case, and it should. It is difficult, and likely impossible, to fit all circumstances with a single, non-yielding legal principle.

Appellate judges, of course, are entitled to their own opinion about the validity of the reasons for non-action in any given case. But legal training and experience do not necessarily place the judge in any better position than a juror in evaluating the

---

5. Pending this appeal, the trial court granted the Hyder–Rowans' application for turnover relief, denied Advent's request to post alternate security, and appointed a receiver. On August 2, 1999, the receiver announced her intention to take possession of the Ginthers' family residence and list it for immediate sale. On August 6, 1999, Advent filed a motion for review of the trial court's order denying its request to post alternate security pending appeal and a motion to stay the efforts at transferring title of the property. We granted the stay. Given our disposition of the appeal, the motion for review of the order denying alternate security is moot and the stay is no longer necessary. Therefore, the motion for review is denied and the stay is lifted.

amount of knowledge a person has, or the reasonableness of a person's actions in using that knowledge.

The jury should decide these questions. The jury's determinations are always subject to judicial appellate review under the no evidence or insufficient evidence standards. Both arms of the law are then satisfied: the fact finding and the appellate review. The dispute in this case is not being resolved for lack of evidence, or lack of a finding. The jury verdict is negated because the jury found the "wrong" answer.

The majority opinion in this case properly recognizes that this court is not a free agent in this matter, and that *stare decisis* demands that this court follow *Kenneco* and *Murphy*. I also recognize our obligation under *stare decisis*. But justice suffers when there is a confusion between the role of judge and the role of the jury. This case is a good example.

I believe that a more just approach would be to hold that a deficiency notice, a denial of coverage, or an allegation in a lawsuit are evidence of a plaintiff's knowledge, but not definitive as a matter of law.