Opinion issued May 28, 2010









 








 


     


In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00430-CV




FERGUS M. GINTHER, Appellant

V.

BANK OF AMERICA, N.A., FORMERLY NATIONSBANK OF TEXAS,
N.A., PREDECESSOR TRUSTEE AND PREDECESSOR EXECUTOR,
Appellee




On Appeal from Probate Court No. 3
Harris County, Texas
Trial Court Cause No. 231749–407




MEMORANDUM OPINION

          Appellant, Fergus M. Ginther, appeals from the trial court’s order granting the
motion of appellee, Bank of America, N.A., formerly Nationsbank of Texas, N.A.,
Predecessor Trustee and Predecessor Executor (“BOA”),


 to strike Fergus’s plea in
intervention and for summary judgment on Fergus’s claims. 
          In two issues, Fergus contends that the trial court erred by granting BOA’s (1)
motion to strike his petition in intervention and (2) motion for summary judgment.
          We modify the judgment of the trial court and affirm as modified.
Summary of Facts and Procedural History
          Noble C. Ginther was a successful Texas oilman. He and his wife, Minnie, had
four children—Noble, Jr., Marilyn, Edmond, and Fergus. This appeal concerns
Fergus’s interests.
          In the 1980s, as part of their estate plan, Noble and Minnie each executed a will
and, together, they created four trusts: (1) the Ginther Revocable Trust, (2) the
Ginther Irrevocable Trust, (3) the GST Trust Agreement, and (4) the Ginther
Educational Trust. Under the terms of each will, River Oaks Bank was named
executor and the children were named beneficiaries. In each of the trusts, with
conditions and exceptions not pertinent to this appeal, River Oaks Bank was named
trustee, and the children were named beneficiaries (upon the deaths of Noble and
Minnie). Noble and Minnie conveyed into the Revocable Trust most of their
significant assets, including their interest in the 2033-acre El Dorado Ranch and
Country Club, their home in River Oaks, and various oil and gas interests.An incorporation of the background litigation is helpful to a more thorough
understanding of the suit before us. Prior to the events at issue, Noble owned an
interest, held by the Revocable Trust, and was an operator in, the Sarco Creek Field
(“the Field”), a lucrative oil and gas reserve in South Texas. NationsBank of Tex.
N.A. v. Akin, Gump, Hauer & Feld, L.L.P., 979 S.W.2d 385, 389 (Tex. App.—Corpus
Christi 1998, pet. denied). The relevant working-interest owners in the Field included
Conoco and the Hyder-Rowan Group. Advent Trust Co. v. Hyder, 12 S.W.3d 534,
537 (Tex. App.—San Antonio 1999, pet. denied). In 1989, Noble, Conoco, and
Hyder entered into a farmout agreement with CPX Petroleum, Inc., which allowed
CPX to produce 1,000 acres of the Field, but only from gas formations not already
under production. NationsBank, 979 S.W.2d at 389. Based on its review of Texas
Railroad Commission records, CPX drilled test wells in what it believed to be a
potentially rich gas zone and found gas at the 4050' level. Id. Unbeknownst to CPX,
however, Noble was already producing from the 4050' formation. Id. When Noble
informed CPX that it could not produce from the 4050' formation, CPX pointed to
Commission records, which did not reflect any production from the 4050' zone. Id. 
CPX sued Noble, Conoco, and Hyder, asserting that they had failed to properly file
production records with the Commission and seeking $25 million in actual damages. 
Hyder, 12 S.W.3d at 537; NationsBank, 979 S.W.2d at 389–90. 
          While the litigation was pending, on September 8, 1989, Noble died. In
addition, in December 1991, River Oaks Bank was succeeded by BOA as trustee of
the Ginther trusts and executor of Noble’s estate. In 1992, BOA created four
additional trusts—the Noble C. Ginther, Jr. Life Insurance Trust, the Edmund L.
Ginther Life Insurance Trust, the Marilyn Ginther DeShong Life Insurance Trust, and
the Fergus M. Ginther Life Insurance Trust (“the life insurance trusts”). In each trust,
Minnie was the insured, BOA was the trustee, and the beneficiary was the named
child. According to Fergus, the premiums on the policies were high because of
Minnie’s advanced age and BOA paid the premiums by borrowing from the
Revocable Trust and borrowing against the policies themselves. 
          Later in 1992, the Texas Railroad Commission determined that the operators
of the Sarco Creek Field had violated Commission reporting requirements and had
engaged in illegal, commingled production. Hyder, 12 S.W.3d at 538. Following the
Commission’s decision, Conoco settled with CPX for $1.9 million and Hyder settled
by forfeiting its interest in the Field. Hyder, 12 S.W.3d at 538. BOA, acting as trustee
of the Revocable Trust and as executor of Noble’s estate, elected to move forward
with the suit. NationsBank, 979 S.W.2d at 390 & n.5. Six days after trial began,
however, BOA settled with CPX, paying it $1.5 million and surrendering Noble’s
interest in the Field. Id. at 390.
          In 1994, Hyder sued Noble’s estate, seeking to recover the value of the interest
in the Sarco Creek Field that it had surrendered to CPX. Hyder, 12 S.W.3d at 538.
While the Hyder litigation was pending, BOA sought “to resign as trustee of all of
the trusts.


 On June 4, 1996, the trial court granted BOA’s application and appointed
Advent Trust Company as successor trustee of all of the trusts.


 The court ordered
BOA to file a final accounting within 45 days. The trial court’s order states, “Upon
the Court’s Order, [BOA] will be relieved and discharged in whole or in part from
any and all liability in regard to its administration of the aforementioned trusts.”
          On July 16, 1996, BOA filed its final accounting and petitioned for final
discharge as trustee.


 
          In addition, BOA filed an application to resign as successor independent
executor of Noble’s estate and for approval of its final accounting. The trial court
approved BOA’s application to resign as executor and ordered that BOA “will be
relieved and discharged in whole or in part, from any and all liability in regard to the
prior administration of the aforementioned Estate upon subsequent hearing and Order
of the Court and that persons interested in this Estate shall have until December 1,
1996 to file any objections to the accounting filed by [BOA] as Executor and for the
discharge of [BOA] from liability as Executor.”
          On October 1, 1996, Advent, in its capacity as “successor trustee for the estate
of Noble Ginther and in the interest of beneficiaries of” the Revocable Trust, the
Irrevocable Trust, and the GST Exemption Trust, filed an original petition against
BOA. Advent did not specifically include the Educational Trust or the life insurance
trusts. 
          By its petition, Advent sought relief under the Trust Code against BOA “in
[BOA’s] capacity as executor and predecessor trustee.” Advent objected to BOA’s
final accounting and alleged that 
[w]hen [BOA] began its tenure in December of 1991 as steward of the
estate of Noble and Minnie Lee Ginther, the total assets of the estate
were in excess of Sixteen Million and No/100 ($16,000,000.00) Dollars
with liquid assets exceeding Three Million and No/100 ($3,000,000.00)
Dollars. At the conclusion of its stewardship on June 4, 1996, [BOA]
tendered to Advent Trust, Successor Trustee and Plaintiff herein, as
estate worth less than half the value received with liquid assets
estimated at a negative value exceeding Twenty-one Thousand and
No/100 (– $21,000) Dollars. . . .
 
          Advent asserted claims against BOA “on behalf of the beneficiaries of the
estate, . . . seeking reimbursement to the trust of sums which may, on notice and
hearing, be characterized as restitution, reimbursement, damages or by any other
description so that the trust may, by this action, be made whole.” 
          Specifically, Advent alleged that BOA breached its fiduciary duties as follows:
          1.       By failing to exercise the judgment and care under the
circumstances then prevailing that persons of ordinary prudence
. . . exercise in the management of their own affairs . . .
concerning the safety of their capital;
          2.       By failing to acquire and retain every kind of property and every
kind of investment that persons of ordinary prudence, discretion,
and intelligence acquire or retain for their own account;
          3.       By indefinitely retaining property without regard to its suitability
for original purchase;
          4.       By failing to invest in and hold such obligations either directly or
in the form of interests in an open-end management type
investment company or investment trust registered under the
Investment Company Act of 1940, 15 U.S.C. 80a–1, et seq., or in
an investment vehicle authorized for collective investment . . . ;
          5.       By failing to properly monitor and supervise litigation against the
trust;
          6.       By failing to exercise a reasonable duty to investigate business
opportunities available to the estate;
          7.       By failing to properly make reasonable and prudent investment
decisions in a manner beneficial to the estate;
          8.       By failing to reasonably assist and support income producing
components of the estate;
          9.       By failing to properly appraise, and maintain updated appraisals
of, the value of the estate being administered;
          10.     By demonstrating a lack of basic competency and knowledge in
administering certain affairs of the estate;
          11.     By selling valuable components of the estate to third parties over
the unanimous objection of the beneficiaries;
          12.     By failing to adequately protect the estate when ordering
settlement of litigation;
          13.     By under-estimating the value of estate property and transferring
estate property in settlement of litigation at a fraction of its true
value or worth;
          14.     By paying unreasonable and unnecessary professional fees, in
amounts that exceed reasonable and customary charges for such 
services;
          15.     By refusing to approve a settlement agreement reached between
beneficiaries of the estate after encouraging the beneficiaries to
negotiate and resolve bona fide disputes of long standing;
          16.     By reneging on its promise of approval of a negotiated settlement
by beneficiaries of bona fide disputes of long standing;
          17.     By signing documents for estate beneficiaries to documents
substantially affecting the estate, without the authorization of the
beneficiaries, and without the authorization of the individual
owners of the undivided interest in the property affected; and 
          18.     Other such actions arising from [BOA’s] administration of the
estate.On November 18, 1996, BOA answered, generally denying all claims. 

          On September 25, 1997, Advent amended its petition against BOA to include
claims of negligence, gross negligence, and fraud, and dropping BOA in its capacity
as executor.

          Also in 1997, in the ongoing Hyder litigation, a $4.3 million final judgment
was entered against Advent as successor trustee of the Revocable Trust. The probate
court ordered that Advent turn over the assets in the Revocable Trust to a receiver
during the pendency of Advent’s appeal. According to Fergus, when Advent learned
that the receiver was to immediately evict Minnie from the River Oaks homestead and
to post it for sale, Advent attempted to change the character of the Revocable Trust
property to avoid enforcement of the turnover order. On March 11, 1998, Advent
filed for bankruptcy protection as managing agent of an insolvent, de facto joint
venture called, “the Ginther Trusts, A Texas Joint Venture” (“the Venture”). In re
The Ginther Trusts, 238 F.3d 686, 688 (5th Cir. 2001). The bankruptcy court
determined that a de facto joint venture existed, but only with regard to the 2033-acre
El Dorado Ranch and Country Club. See id. The remainder of the property in the
Revocable Trust was turned over to the receiver. 

          In July 1999, Minnie died.

          In early 2000, Advent, on behalf of the Venture, sought to sell its interest in the
El Dorado Ranch property. The bankruptcy court authorized the sale, the sale was
consummated, and Fergus appealed. The district court dismissed his appeal as moot
because Fergus had failed to obtain a stay prior to the closing of the sale, and the
Fifth Circuit affirmed. Id. at 688–89. 

          In late 2000, the $4.3 million judgment in the Hyder suit was reversed on
appeal, and the court rendered judgment that Hyder take nothing. Hyder, 12 S.W.3d
at 544. Consequently, the receivership was dissolved, and the Revocable Trust
property was returned to Advent. 

          On January 9, 2001, Fergus filed a petition in intervention in Advent’s suit
against BOA and a cross-claim. Fergus asserted that he was “inadequately
represented” in the suit because Advent had become insolvent and because there was
a conflict of interest between Fergus and Advent. Fergus asserted that, under the
circumstances, “the cestui que trusts have a right to act in the behalf and for the
protection of their eventual interests.” Fergus also alleged that BOA had lent trust
assets to itself as trustee of the Revocable Trust, which constituted a breach of
fiduciary duty resulting in damage to Fergus. As to his cross-claim, Fergus asserted
that Advent had failed to comply with the terms of the GST Exemption Trust. Fergus
sought damages against BOA and Advent. At this time, Fergus did not specifically
complain about the Educational Trust or the life insurance trusts. 

          On February 9, 2001, BOA answered Fergus’s petition, generally denying all
claims and asserting the affirmative defenses of limitations and laches.

          On February 12, 2001, Advent itself formally filed for bankruptcy protection.

          It is undisputed that, on January 24, 2002, Lisa Lee DeMontaigu succeeded
Advent as successor trustee of the Revocable Trust. There was not a successor
executor appointed to replace Advent with regard to the estates.

          On February 11, 2002, Fergus filed his first amended petition in intervention.

          In June 2002, Fergus resolved certain disputes with his family members at a
mediation ordered by the bankruptcy court regarding the Venture. Fergus agreed to
a settlement plan that provided, inter alia, that upon certain distributions under the
plan, Fergus would sever his individual claims against BOA and Advent, and that
Fergus “shall not have any claim of any kind or nature against” Noble’s or Minnie’s
estate, the Revocable Trust, the GST Exemption Trust, “or any legal representative
of any of these estates or trusts, save and except for any claim against Advent or
NationsBank, N.A. [BOA].” (Emphasis added.) 

          On October 1, 2002, BOA petitioned for acceptance of its accounting and
discharge as trustee of all of the trusts, including the Educational Trust and four life
insurance trusts.

          On January 10, 2003, in his second amended petition in intervention, Fergus
dropped his cross-claim against Advent, and he sought damages solely against BOA. 
Referencing Advent’s original petition, Fergus alleged that BOA had breached its
fiduciary duties; had acted with bad faith and gross negligence; had failed to preserve
trust assets to adequately fund his life insurance trust, which caused cancellation of
the policy; and had lent itself trust assets. 

          On April 4, 2003, BOA, in its capacity as former trustee of all of the trusts,
moved to strike Fergus’s petition in intervention and moved for summary judgment
on Fergus’s claims.


 BOA alleged that Fergus lacked standing to intervene “because
the trustee was the proper party to file such claims, and Advent had done so” and that,
to the degree he stated independent claims, Fergus’s claims were barred by limitations
and did not relate back to the date on which Advent had filed its original petition. 
BOA, seemingly inconsistently with its assertion that Fergus had presented individual
claims, stated, “Advent has, in fact, already alleged every claim in its suit against
[BOA] that Fergus alleges in his petition in intervention.” On August 5, 2003,
however, BOA moved for a partial summary judgment with regard to Fergus’s claims
as they applied to the Educational Trust and the life insurance trusts. BOA again
asserted that all claims related to these trusts were barred by limitations. 

          In his response, on August 27, 2003, Fergus contended that, once Advent
became insolvent, he intervened to continue Advent’s pending claims against BOA,
to prevent damage to the suit while no fiduciary was acting on Fergus’s behalf.
Fergus asserted that beneficiaries are always proper parties to suits seeking to recover
trust property and that, moreover, a trustee and a beneficiary may jointly prosecute
claims. Fergus pointed out that BOA did not object to his intervention and that it had,
instead, joined issue on the merits on February 9, 2001, when it answered his petition
with a general denial. Further, he asserted, the bankruptcy court specifically granted
him the authority to pursue these claims by carving out an exception in the mediated
settlement agreement of June 2002. As evidentiary support, Fergus attached the order
of the bankruptcy court. Further, Fergus asserted that all of his claims were
subsumed in Advent’s original petition and that he had not alleged any individual
claims. 

          On November 20, 2003, the trial court struck Fergus’s petition in intervention
and granted summary judgment on all of Fergus’s “individual claims in intervention.” 
It is from this order that Fergus appeals.


 

Plea in Intervention

          In his first issue, Fergus contends that the trial court erred by granting BOA’s
motion to strike his plea in intervention.

 
A.      Standard of Review and Legal Principles

          Rule of Civil Procedure 60 provides that “[a]ny party may intervene by filing
a pleading, subject to being stricken out by the court for sufficient cause on the
motion of any party.”


 Tex. R. Civ. P. 60. “The rule authorizes a party with a
justiciable interest in a pending suit to intervene in the suit as a matter of right.” In
re Union Carbide, 273 S.W.3d 152, 154 (Tex. 2008); Beutel v. Dallas County Flood
Control Dist., No. 1, 916 S.W.2d 685, 691 (Tex. App.—Waco 1996, writ denied)
(stating that party may intervene if “he has justiciable interest in the subject matter
that makes it necessary or proper for him to come into the case for his self-protection”). An intervenor need not secure the trial court’s permission to intervene;
rather, a party opposing the intervention has the burden to challenge it by a motion
to strike. Harris Co. v. Luna-Prudencio, 294 S.W.3d 690, 699 (Tex. App.—Houston
[1st Dist.] 2009, no pet.); Ghidoni v. Stone Oak, Inc., 966 S.W.2d 573, 586 (Tex.
App.—San Antonio 1998, pet. denied); see also Nat. Union Fire Ins. Co. of
Pittsburgh v. Pennzoil Co., 866 S.W.2d 248, 250 (Tex. App.—Corpus Christi 1993,
writ denied) (“An entity need only file a petition in intervention and await a motion
to strike it.”).

          If a party moves to strike the intervention, then the burden shifts to the
intervenor to show a justiciable interest in the suit. Union Carbide, 273 S.W.3d at
155; In re Webb, 266 S.W.3d 544, 548 (Tex. App.—Fort Worth 2008, pet. denied). 
An intervenor has a justiciable interest in a lawsuit “when his interests will be
affected by the litigation.” Id. The interest asserted by the intervenor may be legal
or equitable, but generally must be more than “a mere contingent or remote interest.” 
Guaranty Fed. Sav. Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 657 (Tex.
1990); Webb, 266 S.W.3d 544, 548; see Houston Lighting & Power Co. v. City of San
Antonio, 896 S.W.2d 366, 372 (Tex. App.—Houston [1st Dist.] 1995, writ dism’d
w.o.j.).

          The trial court compares the allegations in the motion to strike with the factual
allegations in the petition for intervention. Metromedia Long Distance Inc. v. Hughes,
810 S.W.2d 494, 497 (Tex. App.—San Antonio 1991, writ denied); Pennzoil Co., 866
S.W.2d at 250 (stating that “the allegations of the opposing sides will be weighed by
the court.”). Although a trial court has broad discretion to determine whether to strike
an intervention, the court abuses its discretion by striking the plea if (1) the intervenor
could have brought the same action, or any part thereof, in his own name, (2) the
intervention will not complicate the case by an excessive multiplication of the issues,
and (3) the intervention is almost essential to effectively protect the intervenor’s
interest. Guar. Fed. Sav, Bank, 793 S.W.2d at 657; Houston Lighting & Power Co.,
896 S.W.2d at 372. 

B.      Analysis

          By his original petition in intervention, dated January 2001, Fergus intervened
in the suit between Advent and BOA. See Harris Co., 294 S.W.3d at 699 (stating that
intervenor need not secure trial court’s permission to intervene; rather, party opposing
intervention has burden to challenge it by a motion to strike). On February 11, 2002,
Fergus amended his petition. On January 15, 2003, he filed his second amended
petition in intervention. 

          On April 4, 2003, BOA, in its capacity as former trustee of all of the trusts and
in its capacity as executor, moved to strike Fergus’s petition in intervention. Upon
BOA’s motion, the burden shifted to Fergus to show a justiciable interest in the suit. 
See Mendez v. Brewer, 626 S.W.2d 498, 499 (Tex. 1982). 

          We consider whether the trial court abused its discretion in comparing the
allegations in BOA’s motion to strike with the factual allegations in Fergus’s live
petition in intervention


 and concluding that Fergus’s motion should be stricken. See
Hughes, 810 S.W.2d at 497. We first consider whether Fergus could have brought
the same action, or any part thereof, in his own name. See Guaranty Fed. Sav. Bank,
793 S.W.2d at 657. In its motion to strike, BOA alleged that “[Fergus] as a
beneficiary of the Trusts does not have standing to intervene in the successor trustee’s
suit against [BOA] because the trustee is the proper party to file such claims, and
Advent has done so.” 

          By his petition in intervention, Fergus asserted that, as a beneficiary of the
trusts, he is a proper party to bring an action arising out of the administration or
distribution of a trust. Advent brought its suit under the Texas Trust Code. Trust
Code section 115.001 provides for proceedings to, inter alia, determine the liability
of a trustee, determine questions arising out of the administration or distribution of
a trust, to require an accounting by a trustee, and to surcharge a trustee. Tex. Prop.
Code Ann. § 115.001 (Vernon Supp. 2009). Section 115.011, “Parties,” provides
that “[a]ny interested person may bring an action under Section 115.001 of this Act.” 
Tex. Prop. Code Ann. § 115.011(a) (Vernon 2007); Moon v. Lesikar, 230 S.W.3d
800, 803 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).


 An “interested
person” is defined as “a trustee, beneficiary, or any other person having an interest
in or a claim against the trust or any person who is affected by the administration of
the trust.” Tex. Prop. Code Ann. § 111.004(7) (Vernon Supp. 2009). Hence, to the
degree Fergus sought to recover in his own name, as a beneficiary, he could have
brought a portion of the instant action. See id.; Guar. Fed. Sav. Bank, 793 S.W.2d at
657.

          By his live petition in intervention, however, Fergus adopts and re-asserts the
claims as previously filed by Advent on behalf of all of the beneficiaries, as follows: 

7. In its original petition in this proceeding, Advent alleges that when
[BOA] began its tenure in December of 1991, the total assets of the
Ginther Revocable Trust were in excess of $16,000,000.00 with liquid
assets exceeding $3,000,000.00. Advent further alleges that, at the
conclusion of [BOA’s] stewardship on June 4, 1996, [BOA] tendered to
it a trust estate worth a negative value. Advent asserts claims on behalf
of the the beneficiaries against [BOA], “seeking reimbursement to the
trust of sums which may, . . . be characterized as restitution,
reimbursement, damages, or by any other description so that the trust
may, by this action, be made whole.”

Fergus also complains that BOA is liable for damages because it “dissipated trust
assets in paying excessive and unnecessary attorney’s fees,” that it failed to foresee
the effects of such payments on meeting obligations, and that BOA lent trust assets
to itself, which constituted a breach of fiduciary duty. On appeal, Fergus contends
that he “had an absolute right to adopt, continue, and refine [] Advent’s claim after
Advent declared bankruptcy,” that “Fergus M. Ginther had no ‘individual’ claims,”
and that his intervention was necessary because the office of trustee was “vacant at
all times after February 11, 2001.” Hence, Fergus sought to intervene by stepping
into the shoes of the trustee. 

          The Trust Code provides that in an action by or against a trustee and in all
proceedings concerning trusts, the trustee is a necessary party “if a trustee is serving
at the time the action is filed.” In re Webb, 266 S.W.3d 544, 548–49 (Tex.
App.—Fort Worth 2008, pet. denied); see Tex. Prop. Code Ann. §§ 111.004,
115.011. This court has held that, because legal title to trust property is vested in the
trustee, the trustee is the proper party to bring an action on behalf of a trust. Interfirst
Bank-Houston, N.A. v. Quintana Petroleum Corp., 699 S.W.2d 864, 874 (Tex.
App.—Houston [1st Dist.] 1985, writ ref’d n.r.e.). There is an exception, however. 
When the trustee cannot or will not enforce the cause of action that it has against a
third person, a beneficiary may enforce it. Id. In such a case, the beneficiary is not
acting on a cause of action vested in him, but he is acting for the trustee. Id. 

          Here, the record shows that Advent had declared itself insolvent, having filed
for bankruptcy protection under Chapter 11. Fergus asserts, and BOA does not
dispute, that Advent was chartered pursuant to the Texas Trust Company Act, that
Advent declared itself insolvent as defined under the Act, and that it was dissolved. 
See Tex. Fin. Code Ann. § 181.001 (Vernon 2006), § 181.002(25)(E) (Vernon Supp.
2009). Pursuant to Finance Code section 186.107, upon dissolution, a fiduciary
“shall (1) terminate all fiduciary positions it holds; (2) surrender all property held by
it as a fiduciary; and (3) settle its fiduciary accounts.” Id. § 186.107 (Vernon 2006). 
Hence, as Fergus urges, upon its insolvency and dissolution, Advent could not
enforce the cause of action it brought against BOA on behalf of the trust beneficiaries
and therefore the exception would apply. See Interfirst Bank-Houston, N.A., 699
S.W.2d at 874. 

          It is undisputed, however, that on January 24, 2002 the trial court appointed
Lisa Lee DeMontaigu as successor trustee, to replace Advent. 

          We review the actions of the trial court “based on the materials before the trial
court at the time it acted.” Beard v. Comm’n for Lawyer Discipline, 279 S.W.3d 895, 
902 (Tex. App.—Dallas 2009, pet. denied). The propriety of Fergus’s intervention
was not a question before the trial court until BOA moved to strike it, in April 2003.
The record shows that, at that time, the successor trustee, DeMontaigu, was in place. 
Therefore, the Interfirst exception does not apply. See Interfirst Bank-Houston, N.A.,
699 S.W.2d at 874. Moreover, the record shows that within days after the
intervention was struck, DeMontaigu took up Advent’s claims, including those on
behalf of Fergus and including the claims involving the life insurance trusts. We
conclude that the first prong has not been met. See Guar. Fed. Sav. Bank, 793 S.W.2d
at 657. 

          Further, under the third prong, because Fergus has maintained that his claims
against BOA were the same as those in Advent’s original petition against BOA and
that he did not bring any individual claims and because there was a trustee in place
to protect the interests of the trusts in the suit against BOA, Fergus’s intervention was
not “almost essential” to effectively protect his interests. See id.

           In sum, we cannot conclude that the trial court abused its discretion by
granting BOA’s motion to strike Fergus’s intervention. See id.

          Accordingly, we overrule Fergus’s first issue. 

Summary Judgment

          In his second issue, Fergus contends that the trial court erred by granting
summary judgment in favor of BOA on his “individual claims” because striking his
intervention precluded any determination on the merits of his claims. 

          The trial court’s order states, in pertinent part, 

This Court, having considered the Motion to strike [Fergus’s] Petition
in Intervention and Motion for Summary Judgment to dismiss all claims
by [Fergus] against [BOA], as Successor Independent Executor of the
Estate of Noble Ginther, Deceased, and as former Trustee of [the
Revocable Trust, the Irrevocable Trust, the GST Exemption Trust, the
Educational Trust, and the life insurance trusts] the evidence presented, 
the arguments of counsel, the pleadings on file, and the relevant law,
finds that the motion has merit and is GRANTED.
ACCORDINGLY, it is ORDERED that the intervention of [Fergus] is
stricken, and [BOA] is granted summary judgment on all of [Fergus’s]
individual claims in the intervention against BOA. [Fergus] shall have
and take nothing by his claims as an intervenor against [BOA].

 
          First, we concluded above that Fergus did not, in his petition in intervention,
assert “individual” claims. This conclusion is supported by BOA’s motion for
summary judgment, which asserts, “If Fergus had independent claims different from
those alleged by the trustee, those claims are barred by limitations.” On appeal,
Fergus contends that he “had no ‘individual’ claims.” 

          Next, we concluded above that the trial court did not abuse its discretion by
striking Fergus’s petition in intervention because Fergus lacked standing to “adopt,
continue, and refine” Advent’s claims against BOA. “Standing is implicit in the
concept of subject matter jurisdiction.” Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852
S.W.2d 440, 443 (Tex. 1993). Because “[s]ubject matter jurisdiction is essential to
the authority of a court to decide a case,” a party’s lack of standing deprives the court
of subject matter jurisdiction and renders subsequent trial court action void. Id.; see
West Orange-Cove Consol. I.S.D. v. Alanis, 107 S.W.3d 558, 583 (Tex. 2003); In re
Smith, 260 S.W.3d 568, 572 (Tex. App.—Houston [14th Dist.] 2008, orig.
proceeding). Hence, summary judgment on the merits of Fergus’s claims was in
error.

          Finally, an order striking an intervention “totally dispose[s] of the issues
relating to the intervenors’ interest in the suit and dismisse[s] the intervenors totally
from the suit.” Ghidoni, 966 S.W.2d at 587. 

          Accordingly, we sustain Fergus’s second issue.

CONCLUSION



          We modify the judgment of the trial court to delete the language “grant[ing]
summary judgment on all of [Fergus’s] individual claims in the intervention against
BOA” and ordering that “[Fergus] shall have and take nothing by his claims.” We
affirm the judgment of the trial court as modified. 

 

 

 

 

                                                             Laura Carter Higley 

                                                             Justice



Panel consists of Chief Justice Radack and Justices Alcala and Higley.