NUMBER 13-04-409-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


SOUTHWEST GRAIN CO., Appellant,


v.



MARTIN P. GARZA, JR., 

ABEL N. GONZALEZ, JR., 

AND AIDA GRACIELA

GONZALEZ, Appellees.

 




On appeal from the 92nd District Court of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Wittig (1)


Memorandum Opinion by Justice Wittig


 

 Appellant, Southwest Grain Co., appeals an adverse jury verdict based upon breach
of contract. In twenty-five issues, appellant raises points of error concerning the legal and
factual sufficiency of the evidence, the four-year statute of limitations, waiver, ambiguity
of the contract language, charge error, lack of credit for additional rent paid, the award of
attorney's fees, and error by the trial court in granting a new trial after an earlier jury verdict
in favor of appellant. As modified, we will affirm in part, and reverse and remand in part
on the issue of attorney's fees.

 The jury found damages on behalf of plaintiffs below, appellees, Martin P. Garza,
Jr., Abel N. Gonzalez, Jr., and Aida Graciela Gonzalez. Although appellees pleaded and
secured findings of fraud and breach of contract, they elected to recover on their contract
claims. The contract claims were based upon a series of ground leases for an easement. 
The leases provided for a base rental plus 1.66% "additional rent." The jury found a
breach of the lease and awarded damages on an annual basis dating back to 1985. The
damages were awarded per annum for sixteen years through 2001, plus the first two
months of 2002. They totaled $2,863,222.63 each for the two groups of appellees. 
Attorney's fees were also awarded in the amount of $2,061,520.30 through trial, plus
additional amounts in the event of appeals. One juror did not sign the verdict form.

 1. Breach of Contract

 In its first issue, appellant asserts the trial court erred by overruling its motion for
directed verdict regarding breach of contract. In its second issue, appellant charges error
because the trial court denied its motion for new trial on the breach of contract issues. In
issue fifteen, appellant contends there was error because the trial court refused a directed
verdict on the statute of limitations. In issue twenty, appellant contends the trial court erred
in denying its motion for new trial on the basis that there was no evidence of contractual
damages. Appellant argues these matters together and we will likewise address these
matters together, first as to breach of contract, and then as to the statute of limitations.

 Appellees contend these and other issues were waived because appellant failed to
comply with Texas Rule of Appellate Procedure 38.1(h) concerning the requisites for briefs. 
See Tex. R. App. P. 38.1(h). Appellant, in its reply brief, seeks to satisfy this requirement
by providing additional authority addressing appellees' complaints.

 We have been instructed that appellate courts should not dismiss an appeal for a
procedural defect whenever any arguable interpretation of the Rules of Appellate
Procedure would preserve the appeal. Verburgt v. Dorner, 959 S.W.2d 615, 617 (Tex.
1997). Our decisions should reflect the policy embodied in our appellate rules that
disfavors disposing of appeals based upon harmless procedural defects. Id. Thus, we
should reasonably and liberally construe the Texas Rules of Appellate Procedure so that
the right to appeal is not lost by imposing requirements not absolutely necessary to effect
the purpose of a rule. Id.; cf. Borg-Warner Corp. v. Flores, 153 S.W.3d 209, 218 (Tex.
App.-Corpus Christi 2004, pet. filed) (issue of factual sufficiency not preserved where
appellant failed to provide appellate court with any statement of the law regarding same). 
We find that appellant has minimally met the requirements to preserve its issues.

 Appellant contends no evidence was presented that it breached the lease terms. 
It contends that no grain sales were conducted at the Rio Grande City facility, the location
of the leased premises. Instead, it claims that sales of grain were conducted at its facility
in McCook, Texas. The sales of grain at McCook were not "derived from, arising out of,
or payable on account of" grain transfer activities that admittedly occurred at Rio Grande
City. Several of appellant's witnesses testified to this effect. Further, the numerous grain
sales invoices introduced into evidence had the letter "M" on them indicating, according to
appellant, that the sales originated at McCook and not Rio Grande City.

 Appellees counter that the lease language defined "gross sales" as the "dollar value
of all sales of goods, services, or combination thereof, and all revenue of every kind and
character derived from, arising out of, or payable on account of a business or business
activities conducted on the sales premises. . . ." Appellees' witnesses, Garza and
Gonzalez, testified that the grain invoices reflected appellant's sales. These numerous
documents were summarized. One derivative exhibit, admitted by agreement, reflected
the gross sales of all business activity that went through the Rio Grande City facility. The
evidence also indicated that Rio Grande City was pivotal to appellant's very successful
grain sales to Mexican markets. The Rio Grande City facility allowed oversized Mexican
trucks to load grain in the United States then traverse the border without the necessity of
traveling on state highways where the use of these larger trucks was prohibited. A former
executive vice president for appellant, Norma Myers, testified that Rio Grande City
generated the sales documents and conducted related activities supporting the grain sales
at the site. She stated the Rio Grande City facility was appellant's selling point for grain
to Mexico. Before appellant had the facility, it did not sell grain to Mexico. Once the Rio
Grande City facility opened, appellant became one of the biggest grain sellers to Mexico. 
One of appellant's directors spent seventy to eighty per cent of his time at the facility and
met, often daily, with Mexican grain customers at the Rio Grande City facility. Myers
testified that most of the sales were made out of this facility, not McCook. Appellant's
sales representative for Mexico also worked out of the facility. The invoices indicated the
business activity originated from Rio Grande City, and not McCook or Brownsville. In sum,
the record reflects that many of the material operative facts were hotly contested by the
parties.

 Myers further testified she was instructed to only show appellees the scale tickets
and not the actual sales invoices. In an affidavit submitted in a preliminary matter in the
case, appellant's general manager swore the company would lose $70,000 per day if the
Rio Grande City facility were shut down. At trial, the manager qualified the prior affidavit
language to say the company was not making that much money per day, and that the
figure included "people breaking contracts and our suppliers' trucks being parked outside
and we couldn't get them in."

 Appellant criticizes the testimony of Myers because she left the company in March
of 1996. According to some of appellant's witnesses, she was a disgruntled employee and
left on bad terms. This too was disputed. Myers was also to receive three percent of any
recovery for additional rent payments.

 A court may instruct a verdict if no evidence of probative force raises a fact issue
on the material questions in the suit. Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,
29 S.W.3d 74, 77 (Tex. 2000). A directed verdict for a defendant is proper in two
situations. First, a court may direct a verdict when a plaintiff fails to raise a fact issue
essential to the plaintiff's right of recovery. Id. Second, a trial court may direct a verdict
for the defendant if the evidence conclusively establishes a defense to the plaintiff's cause
of action. Id.

 The evidence outlined above reveals that appellees adequately raised fact issues
on their contract claims. Id.; see also City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.
2005) (challenge to the legal sufficiency of evidence will be sustained when, among other
things, the evidence offered to establish a vital fact does not exceed a scintilla); Kroger
Texas Ltd. Partnership v. Subaru, 2006 Tex. LEXIS 441, at *9, 49 Tex. Sup. Ct. J. 592 
(Tex. May 5, 2006).

 In its second issue, appellant again contends the trial court erred by denying its
motion for new trial on the breach of contract issues. A trial court's denial of a motion for
new trial is reviewed for abuse of discretion. See Pharo v. Chambers County, 922 S.W.2d
945, 947 (Tex.1996). In determining whether an abuse of discretion has occurred, we view
the evidence in a light most favorable to the court's decision and indulge every legal
presumption in favor of its judgment. In re J.I.Z., 170 S.W.3d 881, 883 (Tex. App.-Corpus
Christi 2005, no pet.). Based upon our review of the record, including the evidence
outlined above, we find no abuse of discretion. See Cliff v. Huggins, 724 S.W.2d 778, 779
(Tex. 1987). Appellant's first and second issues are overruled. 

 2. Limitations Issues

 In appellant's issues fifteen and nineteen, it complains that the trial court erred in
denying its motion for directed verdict on the statute of limitations and no evidence of
contract damages. In issue twenty, it similarly complains of error because the trial court
denied its motion for new trial regarding damages on the basis of no evidence.

 Suit was filed February 23, 1998. As a general rule, a breach of contract claim
accrues when the contract is breached. Stine v. Stewart, 80 S.W.3d 586, 592 (Tex. 2002)
(citing Smith v. Fairbanks, Morse & Co., 101 Tex. 24, 102 S.W. 908, 909 (Tex. 1907)). 
Accordingly, under the four-year statute of limitations, no claims or damages before
February 23, 1994 should be allowed. Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (Vernon
2002). The jury awarded damages from February 2002, back to and including 1985.

 In defense of the limitations issue, appellees pleaded: "The Plaintiffs did not
discovery (sic) the fraud and concealment, by the employees and agents of Southwest
grain until a short time ago. The fraudulent concealment by employees and agents of
Southwest Grain prevented the Plaintiffs from discovery of the important records and
information." Appellees argue the limitations statute was tolled by appellant's fraud and
the doctrine of fraudulent concealment. (2) According to appellees, fraud in and of itself tolls
the statute, citing S.V. v. R.V. 933 S.W.2d 1, 6 (Tex. 1996). S.V. states that the accrual
of a cause of action is deferred in two types of cases: (1) in those involving allegations of
fraud or fraudulent concealment, accrual is deferred because a person cannot be permitted
to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has
run; and (2) in those cases in which the discovery rule applies, "the nature of the injury
incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." 
Id. However, the facts of the S.V. decision are distinguishable because the party R.V. did 
not allege fraud or fraudulent concealment, and could not in that sexual abuse case. Id.
at 8. R.V. was not deceived into thinking that she was not being abused when she was. 
Id. 

 Appellees next cite Wagner & Brown, Ltd. v. Horwood, 58 S.W.3d 732, 736 (Tex.
2001). There, the Texas Supreme Court discusses in dicta: "If Wagner & Brown
fraudulently misrepresented or concealed facts forming the basis of Horwood and Glass's
injury, which we do not decide, then limitations may, indeed, have been tolled. But the
discovery rule exception and tolling based on fraudulent concealment are distinct concepts
that exist for different reasons." Id. "The fraudulent concealment doctrine, unlike the
discovery rule, resembles equitable estoppel." Id. Appellee also cites Mitchell Energy
Corp. v. Bartlett, 958 S.W.2d 430, 439 (Tex. App.-Fort Worth 1997, pet. denied)
(fraudulent concealment is based on the doctrine of equitable estoppel; doctrine tolls or
suspends the running of limitations after it has begun because the defendant concealed
from the plaintiff facts necessary for the plaintiff to know that he had a cause of action). 
Mitchell Energy also holds that the plaintiff asserting fraudulent concealment must have
reasonably relied on the defendant's lies or improper silence; once a plaintiff knows or
should know of the deceit, reliance is no longer reasonable, and the tolling effect ends. Id. 
 Appellees admit they must show: (1) existence of the underlying "tort;" (2) the
defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; 
and (4) the plaintiff's reasonable reliance on the deception. Id.; Cass v. Stephens, 156
S.W.3d 38, 64 (Tex. App.-El Paso 2004, pet. denied). Cass holds that fraudulent
concealment applies to any cause of action, including breach of contract claims. Id. (citing 
Hurbrough v. Cain, 571 S.W.2d 216, 221 (Tex. Civ. App.-Tyler 1978, no writ) (op. on
reh'g); Shipp v. O'Dowd, 454 S.W.2d 845, 847 (Tex. Civ. App.-Waco 1970, writ ref'd
n.r.e.)). Appellees contend the jury's favorable answer to question five of the charge,
based upon the Texas Pattern Jury charge on equitable estoppel, sustains their burden. 
Appellant argues the question should not have been answered. 

 For context, the questions of the charge asked in substance: 

 (1) Did appellant agree to pay additional rent? 


 (2) Did appellant fail to comply with the agreement? 


 (3) Was the failure excused by waiver? 


 (4) Specify the years in which waiver occurred. 


 (5) Was the failure of appellees to exercise any rights under the lease
excused?


Question three was predicated upon a "yes" answer to question two, asking whether
appellant failed to comply with the contract. It inquired whether appellant's failure to
comply was excused as to any of the appellees. The jury answered "no" and accordingly,
did not answer question four regarding which years appellant was excused from
compliance. Question five followed, predicated upon a "yes" answer to any part of
question four. There was no "yes" answer to question four. The improperly worded
predicate may explain why the jury answered a question they were instructed not to
answer.

 Appellant also argues that because the gratuitous answer to question five was not
necessarily referable to the statute of limitations, appellees cannot rely thereon in this
appeal, citing Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507,
516 (Tex. 1998). There, the question was clearly submitted as part of the
DTPA/Insurance Code claim and the jury was instructed not to answer it unless it found
that J & H had engaged in an "unfair or deceptive act or practice" that was a producing
cause of damages to Kenneco. Id. The question was not submitted as an independent
common-law issue. Id. Accordingly, the wording of the question and its placement after
other questions concerning statutory claims revealed that it was an attempt to submit the
180-day extension issue either under the Insurance Code or the DTPA. Id. While there
is merit to appellant's argument, particularly regarding the predicate, question five here
more closely aligns itself with equitable estoppel than does the analogous question in
Johnson & Higgins. See id.

 More problematic for appellees is the jury's answer to question fourteen. That
question inquired: "By what date did Abel N. Gonzalez, Jr. or Aida Graciela Gonzalez, or
Martin P. Garza, Jr. become aware that grain sales income was not being used by
Southwest Grain Co. to calculate rent payments?" (3) The jury responded as to all three
plaintiffs: "1985." Appellees counter that question thirteen was answered the year 2000. 
That inquiry asked when did the plaintiffs become aware of the information regarding gross
grain sales income to calculate the additional rent payments.

 Appellees concede they tried to obtain grain sales records at least in 1988 and
1994. The record suggests that these gross sales records were not produced until 2000
after a court order. This was two years after suit was filed. Because the evidence showed
fraud and fraudulent concealment, appellees argue their failure to exercise rights under the
contract was excused.

 We first address appellees' argument that a finding of fraud, standing alone, will
defer the accrual date of their contract claim. In fraud or fraudulent concealment cases,
accrual is deferred under a species of equitable estoppel known as fraudulent
concealment. Advent Trust Co. v. Hyder, 12 S.W.3d 534, 538 (Tex. App.-San Antonio
1999, pet. denied) (citing Borderlon v. Peck, 661 S.W.2d 907, 908 (Tex.1983)). A
defendant is estopped from relying on the statute of limitations until the plaintiff learns of
the right of action or should have learned of it through the exercise of reasonable diligence. 
Advent Trust, 12 S.W.3d. at 538 (citing Computer Assocs. Int'l, Inc. v. Altai, 918 S.W.2d
453, 456 (Tex. 1996)). However, in both the case at bar and Advent Trust, when the
charge is viewed as a whole, the fraud question submitted to the jury involved the
substantive tort of fraud, not fraudulent concealment or equitable estoppel as avoidances
to the statute of limitations. Advent Trust, 12 S.W.3d at 542. Furthermore, appellees'
issue of fraud omits the critical element of the appellees' reasonable reliance or lack of
means of obtaining knowledge of the facts. Id. The doctrine of equitable estoppel
requires: (1) a false representation or concealment of material facts; (2) made with
knowledge, actual or constructive, of those facts; (3) with the intention that it should be
acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; 
(5) who detrimentally relies on the representations. Johnson & Higgins, 962 S.W.2d at
516-17 (emphasis added). Accordingly, we conclude that the fraud question was not
submitted as an independent common-law defense to the four-year statute of limitations
and will not support a deferral of accrual of limitations. See id. 

 In jury question five, a similar submission problem of the jury charge obtains. In a
series of three questions, the jury is first asked in question three whether appellant's failure
to comply with the agreement was excused because of waiver. The jury responded "no." 
Question four was predicated upon a "yes" answer and instructed the jury to specify which
years in which the waiver occurred. The jury followed the court's instructions and did not
answer question four. Question five was predicated again upon a "yes" answer to question
four and should not have been answered under the charge. (4) Again, viewing the charge as
a whole, the first five issues deal with the breach of contract claims. The questions asked
in substance whether appellant agreed to pay additional rent, whether appellant failed to
comply with the agreement, whether the failure was excused by waiver, in what years did
the waiver occur, and whether the failure of appellees to exercise any rights under the
lease was excused. Once again, question five was not submitted as an independent
common-law defense to the four year statute of limitations to support a deferral of accrual
of limitations. See id. However, even assuming arguendo that question five submitted
equitable estoppel in a substantially correct form, appellees are burdened with the jurors'
answer to question fourteen. There, the finders of fact concluded that by 1985, appellees
became aware that "grain sales income was not being used by Southwest Grain Co. to
calculate rental payments." This was the gravamen of appellees' breach of contract
claims.

 We also observe that hundreds of mega-sized Mexican grain trucks traversed
appellees' Rio Grande City property, year after year. It is difficult to contend that 
landowners could somehow be ignorant of millions of dollars worth of grain being trucked
through their property. See Barfield v. Howard M. Smith Co. of Amarillo, 426 S.W.2d 834,
840 (Tex. 1968) (a party to arm's-length business transactions had a duty to use ordinary
care for the protection of its own interests and is charged with knowledge of all facts which
would have been discovered by a reasonably prudent person similarly situated). 

 The accrual date of a cause of action is a question of law. Moreno v. Sterling Drug,
Inc., 787 S.W.2d 348, 351 (Tex. 1990) (the question of when a cause of action accrues is
a judicial one unless defined by the legislature). A cause of action accrues when a
wrongful act causes some legal injury, even if the fact of injury is not discovered until later,
and even if all resulting damages have not yet occurred. Murphy v. Campbell, 964 S.W.2d
265, 270 (Tex. 1997) (citing S.V., 933 S.W.2d at 4). The legal injury rule can be traced
to Houston Water-Works Co. v. Kennedy, 70 Tex. 233, 8 S.W. 36, (1888). The estoppel
effect is not permanent. Fraudulent concealment merely tolls or suspends the statute of
limitations until the time the plaintiff learns of the facts that give rise to his cause of action
or should learn of the facts in the exercise of reasonable diligence. As with any form of
equitable estoppel, a party asserting fraudulent concealment must have relied reasonably
on appellant's lies or improper silence. Once appellees knew or should have known of the
deceit, reliance is no longer reasonable, and the tolling effect ends. Arabian Shield
Development Co. v. Hunt, 808 S.W.2d 577, 585 (Tex. App.-Dallas 1991, writ denied). 
Once on notice of the deception, a party must act diligently. Id. According to the jury,
appellees knew that grain sales income was not being used to calculate rent payments in
1985. (5) That was also the first year the jury awarded damages. We conclude the first
breach of contract cause of action accrued no later than 1985. See id.; Murphy 964
S.W.2d at 270; see also, Exxon Corp. v. Miesch, 180 S.W.3d. 299, 313-14 (Tex.
App.-Corpus Christi 2005, pet. granted); see also KPMG Peat Marwick v. Harrison County
Housing Finance Corp., 988 S.W.2d 746, 749 (Tex. 1999) (accrual occurs when the
plaintiff knew or should have known of the wrongfully caused injury); Earle v. Ratliff, 998
S.W.2d 882, 888 (Tex. 1999); Stine v. Stewart, 80 S.W.3d at 592. Therefore, appellees'
claims before February 23, 1994, are disallowed. We will reduce appellees' damages
accordingly. See Tex. R. App. P. 43.2(b). We sustain appellant's issues nineteen and
twenty. We overrule appellant's issue fifteen. See Guzman v. Ugly Duckling Car Sales of
Texas, L.L.P., 63 S.W.3d 522, 528 (Tex. App.-San Antonio 2001, pet. denied) (a directed
verdict is improper when the evidence offered on an issue is sufficient to raise an issue of
fact). 

 3. Waiver Issues

 Appellant's issues three, four, and five urge that the jury's answer to the waiver
issue was against the great weight and preponderance of the evidence and that the court
erred in refusing to grant a directed verdict on waiver, or erred in refusing to grant a new
trial in connection with the waiver issue. Appellant argues that by accepting its own
calculation of the additional rent due on sales from the Rio Grande City facility year after
year, appellees waived the right to collect any further additional rent based upon grain
sales. 

 Waiver is defined as "an intentional relinquishment of a known right or intentional
conduct inconsistent with claiming that right." Jernigan v. Langley, 111 S.W.3d 153, 157
(Tex. 2003) (citing Sun Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex.1987); 
U.S. Fid. & Guar. Co. v. Bimco Iron & Metal Corp., 464 S.W.2d 353, 357 (Tex.1971)). 
Waiver is largely a matter of intent. For implied waiver to be found through a party's
actions, intent must be clearly demonstrated by the surrounding facts and circumstances. 
Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n, Inc., 1 S.W.3d 108, 111 (Tex.
1999). There is no waiver of a right if the person sought to be charged with waiver says
or does nothing inconsistent with an intent to rely upon such right. Maryland Cas. Co. v.
Palestine Fashions, Inc., 402 S.W.2d 883, 888 (Tex. 1966). Waiver is ordinarily a question
of fact, but when the facts and circumstances are undisputed, the question becomes one
of law. Motor Vehicle Bd., 1 S.W.3d at 111.

 Appellant argues that appellees claimed that appellant paid insufficient additional
rent after the execution of the first leases in 1981. Appellant calculated and paid additional
rent to appellees for many years. Appellees accepted and cashed all rent checks. 
According to appellant, appellees were furnished summary sheets and backup records
detailing the additional rent calculations. Appellees hired certified public accountants and
a law firm to audit the material records beginning in 1987. Appellant also hired a CPA in
1997 to provide another explanation of the rent calculations. Despite knowing how the rent
was being calculated, appellees accepted and cashed all rent checks prior to the lawsuit,
according to appellant.

 Appellees counter that appellant did not prove that appellees intended to waive their
rights to additional rents, citing Enserch Corp. v. Rebich, 925 S.W.2d 75, 82 (Tex.
App.-Tyler 1996, writ dism'd). We agree. The key element in establishing waiver is the
intent of the alleged waiving party. Id. The very factors argued by appellant, that appellees
continued to ask for records and complained the additional rents were not being properly
calculated, demonstrate a lack of intent to waive their rights under the contracts. Appellees
also made some notations on checks and correspondence expressing their concern that
appellant was not complying with the contract. Further, as argued by appellee, "waiver by
implication should not be inferred contrary to the intention of the party whose rights would
be injuriously affected thereby, unless the opposite party has been misled to his or her
prejudice." Id. (citing Cecil Pond Const. Co. v. Ed Bell Investments, Inc., 864 S.W.2d 211,
215 (Tex. App.-Tyler 1993, no writ). Appellant neither alleges nor points us to any
evidence that it was somehow prejudiced or misled by paying less than the agreed upon
additional rents for many years.

 The various annual leases also contained an express non-waiver clause. Appellees
argue such clauses are valid and enforceable. We agree. Although non-waiver clauses
may themselves be waived, they are generally considered valid and enforceable. A.G.E.,
Inc. v. Buford, 105 S.W.3d 667, 676 (Tex. App.-Austin 2003, pet. denied). Appellant
points to no evidence in the record that appellees expressly or impliedly waived this clause
of the contract. We would also note that each contract had a period of one year. The non-waiver clause was thus renewed year after year.

 Finally, the law also indicates that when a person accepting benefits does not have
knowledge of all material facts, ratification or estoppel cannot ensue from acceptance of
the benefits. Herschbach v. City of Corpus Christi, 883 S.W.2d 720, 737 (Tex.
App.-Corpus Christi 1994, writ denied) (citing Frazier v. Wynn, 472 S.W.2d 750, 753 (Tex.
1971)). The record is also devoid of evidence that appellant was prejudiced by appellees'
acceptance of lesser monies for additional rent. Therefore, the affirmative defense of
waiver by implication is not available to appellant. Enserch Corp. 925 S.W.2d at 82. 
Thus, we cannot conclude, as appellant advocates, that the verdict is so against the great
weight and preponderance of the evidence as to be manifestly unjust. See Pool v. Ford
Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). Similarily, a directed verdict is improper
when the evidence offered on an issue is sufficient to raise an issue of fact. See Guzman,
63 S.W.3d at 528. And, there being sufficient evidence to support the jury's findings of no
waiver, the trial court properly denied appellant's motion for new trial on this issue. Oyster
Creek Financial Corp. v. Richwood Investments II, Inc., 176 S.W.3d 307, 324 (Tex.
App.-Houston [1st Dist.] 2004, pet. denied) (standard of review of the denial of a motion
for new trial is abuse of discretion). We overrule appellant's issues three, four, and five.

 4. Ambiguity

 In issues six, seven, eight, nine, and ten, appellant argues the additional rent
provision of the lease contracts is ambiguous. It claims the lease contracts are reasonably
susceptible to more than one meaning. The challenged provision states:

 5. Additional Rent. LESSEE further agrees to pay LESSORS without prior
notice or demand at their address listed on the last page hereof, or such
other place as LESSORS may designate in writing, as additional rent for the
leased premises, a sum equal to the amount by which One and 66/100
(1.66%) percent of LESSEE'S gross sales in any lease year exceeds
LESSEE'S annual rental for such year. In this connection, the terms "lease
year", "annual rental", "gross rental" and "sales premises shall mean as
follows:


 * * *


 C. "Gross Sales": The total amount of the dollar value of all sales of
goods, services or combination thereof, and all revenue of every kind
and character derived from, arising out of, or payable on account of
a business or business activities conducted on the sales premises .
. . .

 

 D. "Sales Premises": The real property presently leased by LESSEE
from the Rio Grande City Consolidated Independent School District
and served by the easement herein granted.


 6. Records. LESSEE shall maintain (according to good accounting
practices) full and accurate books and records with respect to the gross
sales made at or from the sales premises . . . .

 

 According to appellant, the disputed language relates to the definition of "gross
sales." Appellant argues that the language "derived from and, arising out of, or payable
on account of a business or business activities conducted on the sales premises" pertains
only to specific activities conducted on the leased premises. Appellant claims that
appellees' interpretation relates to other activities off premises "if those activities are even
remotely connected to the other . . . ." Appellant concludes by arguing that a written
instrument is ambiguous when its meaning is uncertain and doubtful or it is reasonably
susceptible to more than one meaning, taking into consideration the circumstances present
when the instrument was executed. Appellant cites and quotes from Towers of Texas, Inc.
v. J & J Sys., Inc., 834 S.W.2d 1, 2 (Tex. 1992).

 Appellees counter that the language is not ambiguous and to the contrary, is clear. 
The leases required appellant to pay additional rent as a percentage of the company's
"gross sales." Gross sales are broadly and clearly defined as, "[t]he total amount of the
dollar value of all sales of goods, services or combination thereof, and all revenue of every
kind and character derived from, arising out of, or payable on account of a business or
business activities conducted on the sales premises . . . ." Appellees also point out that
counsel for appellant argued in his motion for directed verdict: "In connection with the
theory of recovery related to contract and breach of contract, the intent of the parties is
clear." However, in context, counsel went on to say that to the extent the contract may be
ambiguous, the evidence showed the clear intent.

 Appellees further argue that appellant cannot create an ambiguity by combing the
"records" provision of the lease. The "records" provision simply mandates books be kept
regarding gross sales "at and from" the sales premises. This phrasing is not inconsistent
with the gross sales provision "derived from, arising out of, or payable on account of a
business or business activities conducted on the sales premises . . . ." In our view, the
records-keeping provision is a lesser included, more narrow provision, which is itself
included in the broader definition of "gross sales."

 A contract is not ambagious if it can be given a certain or definite legal meaning.
Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 861 (Tex. 2000). Whether a
contract is ambiguous is a question of law for the court to decide. Id. In construing
contracts, we ascertain and give effect to the parties' intentions as expressed in the
document. Id. Ambiguity does not arise simply because the parties advance conflicting
interpretations of the contract; rather, for an ambiguity to exist, both interpretations must
be reasonable. Id. We agree that the contract language is unambiguous because it can
be given a definite legal meaning, and it is not reasonably susceptible to more than one
meaning. Id. Appellant's issue six is overruled. Because appellant's issues seven, eight,
nine, and ten are predicated upon the assumption that the contract was ambiguous, they
are also overruled.

 5. The Court's Charge

 Appellant attacks the trial court's rulings on the charge in issues eleven, twelve,
thirteen, and fourteen. In issue eleven, appellant claims the trial court would not allow
appellant to "object to the charge." More appropriately, appellant's actual complaint at the
charge conference was that the trial judge did rule on appellant's objections and refused
issues, but did not allow appellant to reiterate its objections. Appellant attempted to repeat
the same identical objection over and over again to each of his requested and refused
issues. The trial court marked each request refused, signed the refusal, and overruled
appellant's objection to the refusal. The standard of review for error in a jury charge is
abuse of discretion. In re V.L.K., 24 S.W.3d 338, 341 (Tex.2000). Contrary to appellant's
assertion, the trial court did rule upon appellant's objections. Thus, we find no abuse of
discretion. See id. We overrule this issue.

 In its issue number twelve, appellant argues the trial court erred in refusing its issue
on anticipatory repudiation of the contract. When appellees filed suit on February 23,
1998, they also requested and obtained a temporary restraining order against appellant. 
According to appellant, this effectively deprived appellant of the use of the property and
thus appellant repudiated the contract. The restraining order was stayed four days later
by this Court. No permanent injunction ensued. After four days, parties did business as
usual. Appellant cites Group Life and Health Ins. Co. v. Turner, 620 S.W.2d 670, 672-73
(Tex. Civ. App.-Dallas 1981, no writ) (repudiation is conduct which shows a fixed intention
to abandon, renounce, and refuse to perform the contract, without just excuse). The
primary thrust of the restraining order was to prohibit the spoliation of evidence by
appellant. Appellant points to no evidence in the record that appellees had a fixed intent
to renounce and refuse to perform the contract. (6) In fact, appellees' original petition,
containing the request for the restraining order, was to enforce the contract, not renounce
it. We find no abuse of discretion by the court's refusal of appellant's repudiation issue. 
See In re V.L.K., 24 S.W.3d at 341. We overrule this issue.

 In its thirteenth issue, appellant complains of error by the trial court in refusing a jury
issue asking in which years the contract was breached. This question was already
included in two places, that is, in damage questions fifteen and sixteen. These questions 
inquired on a year-by-year basis what damages were proximately caused by appellant's
conduct. Furthermore, as appellees suggest, there was no dispute that appellant did not
pay the claimed additional rent in each of the years that damages were found by the jury. 
Appellant argued in trial, as it does on appeal, that it had properly calculated additional rent
based only on the transfer charges. Appellant also contended that it did not owe anything
on McCook sales and that those sales, even if the grain went through Rio Grande City,
were not sales of goods, or revenue arising out of, or payable on account of a business or
business activities conducted in Rio Grande City. Stated otherwise, appellant's defense
was consistent for each year and it did not argue or present evidence that appellees'
claims or its defenses were somehow different in different years. (7) Therefore, the trial court
did not abuse its discretion by refusing the requested issue both because the issue was
not raised and, in any event, was covered by questions 15 and 16. See In re V.L.K., 24
S.W.3d at 341; Bedford v. Moore, 166 S.W.3d 454, 458 (Tex. App.-Fort Worth 2005, no
pet.) (to have a question submitted to the jury, there must be a proper legal theory, and
there must be sufficient evidence adduced to warrant its submission). We overrule this
issue.

 6. Appellant's Attorney's Fees

 Next appellant complains it was entitled to an issue on attorney's fees. Appellant
cites no authority that would allow its recovery of attorney's fees when unsuccessfully
defending a breach of contract case. This issue was properly rejected by the trial court. 
Appellant did not prevail and even a successful defense of a contract claim does not allow
attorney's fees unless provided by contract. Horizontal Holes, Inc. v. River Valley
Enterprises, Inc., 197 S.W.3d 834, 835-36 (Tex. App.-Dallas 2006, no pet.). The civil
practices and remedies code allows a party to recover such fees if the party prevails on a
cause of action for which attorney's fees are recoverable and recovers damages. Tex. Civ.
Prac. & Rem. Code Ann. § 38.001(8) (Vernon 1997); Green Int'l, Inc. v. Solis, 951 S.W.2d
384, 390 (Tex. 1997). However, a party who does not recover for breach of contract
cannot recover attorney's fees under that theory. Horizontal Holes, Inc. 197 S.W.3d at
835-36. Appellant's fourteenth issue is overruled.

 7. Credits

 In issues sixteen and nineteen, appellant contends that the jury did not properly
credit it for additional rent payments actually made by appellant. While the jury properly
deducted base rent paid from the damages found, it did not deduct additional rent
payments made by appellant. Appellees argue waiver of the issue which we addressed
above. Thereafter, appellees inform us that "it appears that the jury failed to give credit for
additional rent actually paid." We agree.

 As we discussed in the limitations issue supra, no claims or damages before
February 23, 1994, should be allowed and therefore, no credits before that date are
allowed. The amounts of additional rents already paid are found on appellant's exhibit
seven. Credits should have been deducted from the damages awarded to Abel N.
Gonzalez, Jr. and Aida Graciela Gonzalez in the amount of $19,405.03, and a similar credit
should have been deducted from the damages awarded to Martin Garza in like amount. 
We sustain issue nineteen, and modify the judgment accordingly. See Tex. R. App. P.
43.2(b). (8) 

 8. Appellees' Attorney's Fees

 In its issues seventeen, eighteen, twenty-one, twenty-two, twenty-three, and twenty-four, appellant argues: (1) no attorney's fees should be awarded; (2) improper award of
attorney's fees; (3) a contingent fee was improper; (4) the amount awarded was too large;
and (5) alternatively, appellees' award of attorney's fees should be adjusted. Appellant
begins its argument by insisting that the attorney's fees must be segregated between the
fraud and contract claims, as well as the defense of the counter-claim. It cites Crow v.
Central Soya Co., Inc., 651 S.W.2d 392, 396 (Tex. App.-Fort Worth 1983, ref. n.r.e.) (fees
attributable to the defense of a counterclaim are not recoverable unless the facts
necessary for the plaintiff to recover also serve to defeat the counterclaim). We agree. 
Appellant also cites Bray v. Curtis, 544 S.W.2d 816, 820 (Tex. Civ. App.-Corpus Christi
1976, ref. n.r.e.) (unless attorney's fees are provided by statute, or by a contract between
the parties, such fees are not recoverable). Again, we agree. Finally, appellant cites
Panizo v. Young Men's Christian Ass'n of Greater Houston Area, 938 S.W.2d 163,170
(Tex. App.-Houston [1st Dist.] 1996, no writ). Panizo holds that a party seeking attorney's
fees usually has a duty to segregate nonrecoverable fees from recoverable fees and to
segregate the fees owed by different parties. Id. However, it also reiterates the historical
exception to the duty to segregate when the attorney's fees rendered are in connection with
claims arising out of the same transaction and are so interrelated that their prosecution or
defense entails proof or denial of essentially the same facts. Id. (citing Stewart Title Guar.
Co. v. Sterling, 822 S.W.2d 1, 10 (Tex.1991)). 

 The supreme court has recently reaffirmed the rule that if any attorney's fees relate
solely to a claim for which such fees are unrecoverable, a claimant must segregate
recoverable from unrecoverable fees. Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d
299, 313 (Tex. 2006). Intertwined facts do not make tort fees recoverable per se; it is only
when discrete legal services advance both a recoverable and unrecoverable claim that they
are so intertwined that they need not be segregated. Id. The court modified Sterling to
that extent. Id. at 314. 

 Whether fees can be segregated between various claims historically has been a
question for the court. Cotten v. Weatherford Bancshares, Inc., 187 S.W.3d 687, 709 (Tex.
App.-Fort Worth 2006, pet. denied). Again, Tony Gullo Motors somewhat modifies that
rule indicating that sometimes the matters in issue are more a mixed question of law and
fact for the jury. Tony Gullo Motors, 212 S.W.3d at 313. Here, the duties of the parties
arose out of a single contract that was renewed year after year. The same facts necessary
for appellees to establish their breach of contract claims would also inure to the defense
of appellant's counter-claim, both in pre-trial discovery, and during the trial itself. Whether
or not appellant fraudulently concealed vital information concerning the additional rents or
committed fraud was also intertwined with both the assertions and defenses of all the
parties regarding recovery under the contract. Discovery, voir dire, examination of the
witnesses, and most every aspect of the trial required the same attorney services in order
to prove or disprove these contentions. See id. We conclude that the discrete legal
services advanced both recoverable and unrecoverable claims that were so intertwined
that they need not be segregated. Id. These issues are overruled. (9)

 With regard to appellant's issue contesting the contingent fee award, appellant cites
Arthur Andersen & Co. v. Perry Equipment Corp., 945 S.W.2d 812, 818 (Tex. 1997)
(party's contingent fee agreement should be considered by the fact finder, and is
admissible in evidence, but the agreement alone cannot support an award of attorney's
fees under Texas Business and Commerce Code section 17.50(d)). Similarly, appellant
cites Lubbock County v. Strube, 953 S.W.2d 847, 858 (Tex. App.-Austin 1997, no writ)
(finding there was insufficient evidence for the jury to determine whether the amount was
reasonable and necessary; therefore reversing award of attorney's fees). The record here
decidedly departs from the appellant's authorities. First, we are not dealing with either a
DTPA claim or a jury submission requesting a percentage answer. See Arthur Andersen
& Co. 945 S.W.2d at 818-19. Second, appellees duly supported their claim for attorney's
fees through the testimony of both of appellees' trial counsel. Cf. Lubbock County, 953
S.W.2d at 858 (finding insufficient evidence where jury was asked to award attorney's fees
as a percentage of damages). Counsel for appellant also testified about the
reasonableness and necessity of his attorney's fees. Appellees' counsel's testimony
covered, in varying degrees, the eight factors found in the rules of professional conduct. 
See Tex. Disciplinary R. Prof'l Conduct 1.04; see also Arthur Andersen & Co. 945
S.W.2d at 818-19. This issue is overruled as to the argument that any contingent award
was improper.

 Appellant next argues the fees are excessive, citing Argonaut Ins. Co. v. ABC Steel
Products Co., Inc., 582 S.W.2d 883, 889 (Tex. Civ. App.-Texarkana 1979, writ ref'd, n.r.e.)
(in determining whether the award is excessive, the reviewing court is entitled to look at the
entire record and to view the matter in the light of the testimony, the amount in controversy,
the nature of the case, and our own common knowledge and experience as lawyers and
judges). Over 1000 hours were spent on this matter by appellees' two trial counsel. Given
the difficulty and novelty of the questions involved, the time, the preclusion of other
employment, the usual and customary fees charged, the amounts involved, the result, the
nature and length of the professional relationships with the clients, the experience,
reputation, and ability of the lawyers performing the services, and the fact that the
attorney's fees contract was contingent, based upon the jury's verdict we would not
conclude the attorney's fees were excessive. See Id.; Tex. Disciplinary R. Prof'l
Conduct 1.04. However, the fact that we have substantially reduced the damage award,
which dated back to 1985, also works to change one of the most significant factors to be
considered by the fact finder, i.e., the results obtained. Id. 

 Finally, appellant also contends that, even if appellees were properly awarded
attorney's fees based upon a contingent fee contract, the jury's award should be adjusted
to reflect a percentage of the actual damages recoverable. The jury's attorney's fees
question asked for a total dollar amount to be awarded appellees. Both sides agree that
the award was based upon a contingent fee. The percentages awarded were supported
by the testimony of Mr. Ramirez for an amount of 36% through trial, 40% if appealed to the
court of appeals, and 45% if reviewed by the Texas Supreme Court. According to the
record, these calculations were clearly based upon the recovery of additional rents dating
back to 1985. We have disallowed any recovery on claims for damages before February
23, 1994. Therefore, we must likewise disallow any attorney's fees for any recovery before
February 23, 1994. See Argonaut Ins. Co., 582 S.W.2d at 889. While in this case, it would
seem that a remittitur is easily discernable, as we read the Texas Supreme Court's latest
pronouncement, we may not substitute our judgment for that of the jury as to how much
weight to give the "results obtained" factor and how to balance that factor in conjunction
with the evidence of each of the other factors the jury was instructed to consider in
awarding attorney's fees. Barker v. Eckman, 2006 Tex. LEXIS 1187, at *18-20, 50 Tex.
Sup. Ct. J. 175 (Tex. Dec. 1, 2006). Nor may we apparently use a "presumptive
proportionality" to effectuate a remittitur of attorneys fees. (10) Id. at *19-*20 (citing Tatum v.
Preston Carter Co., 702 S.W.2d 186, 188 (Tex. 1986)) (holding that court of appeals erred
in proportionally reducing exemplary damages in the exact ratio as the actual damages
were reduced). We conclude that for us to simply reduce or remit excessive attorney's
fees according to the percentages found by the jury is problematic. We are authorized to
reverse and remand only the award of attorneys' fees. ASAI Corp. v. Vanco Insulation
Abatement, Inc., 932 S.W.2d 118, 124 (Tex. App.-El Paso 1996, no writ). We so hold. 
Appellant's issue seventeen is sustained. Appellant's other issues concerning appellees'
attorney's fees are overruled.

 9. New Trial Granted

 In its final issue, appellant contends the trial court erred by granting a new trial in
January 2003 allegedly based on jury misconduct. In any event, the new trial was granted
"in the interests of justice." Appellees cite Wilkins v. Methodist Health Care System, 160
S.W.3d 559, 563 (Tex. 2005). Wilkins holds that, except in very limited circumstances, an
order granting a motion for new trial rendered within the period of the trial court's plenary
power is not reviewable on appeal, citing Cummins v. Paisan Constr. Co., 682 S.W.2d
235, 236 (Tex.1984). See also Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 918
(Tex. 1985) (noting two instances when a Texas appellate court has overturned the trial
court's grant of a new trial: when the trial court's order was wholly void, and where the trial
court specified in a written order that the sole ground for granting the motion was that the
jury's answers to special issues were irreconcilably conflicting). When a motion for new
trial is granted, "the case shall be reinstated upon the docket of the trial court and stand
for trial the same as though no trial had been had." Wilkins 160 S.W.3d. at 563. Issue
twenty-five is overruled.

Conclusion


 The judgment of the trial court is reversed and remanded on the issue of attorney's
fees only. The remainder of the judgment is modified, and affirmed as modified, by
reducing each set of appellees' damages by $1,210,919.52. The remaining damages are
further each reduced by a credit of $19,405.03. The judgment in favor of appellee Martin
P. Garza is therefore affirmed in the amount of $1,632,898.18. The judgment in favor of
appellees, Abel N. Gonzalez, Jr. and Aida Graciela Gonzalez, is likewise affirmed in the
amount of $1,632,898.18.


 

 DON WITTIG,

 Justice





Memorandum opinion delivered and filed 

this the 12th day of April, 2007.

 

1. Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by Chief Justice of the 
Supreme Court of Texas pursuant to the government code. Tex. Gov't Code Ann. § 74.003 (Vernon 2005).
2. Appellants do not contend that the discovery rule applies.
3. At oral argument, appellees argued that there was no dispute about the base rent and that, of
course, appellees knew that grain sales were not being used to calculate the base rent. This argument was
not raised by objection at the charge conference or in appellees' brief and is therefore waived. In any event,
in context of the charge as a whole, the only time rent was to be based on grain sales was in the application
of the 1.66% of gross sales as additional rent. According to the record, the two primary sources of gross
sales were, first and foremost, grain sales, and to a much lesser degree, transfer charges generated by the
Rio Grande City facility. The voluminous records introduced by appellees were grain sales, which were the
sine qua non of appellees' claims. Without the grain sales in question, no additional rent was due, other than
that due for transfer fees already paid by appellant. Appellant contended throughout that it only owed the
transfer fees. Appellees contended throughout that additional rent was also due on the grain sales.
4. As indicated above, the predicate to question five was incorrectly worded. A more appropriate
wording would have been: "If you answered by specifying any year or years to any part of question 4, then
answer yes or no as to each of the corresponding individuals. Otherwise do not answer this question."
5. Appellant could well have been guilty of fraud or fraudulent concealment before 1985. But, by that
date, appellees were charged with knowledge that appellants were not paying additional rents based upon
grain sales. Appellant's consistent approach, well known to appellees, was to base additional rent solely upon
transfer fees at the Rio Grande facility.
6. Pleadings are ordinarily not evidence. See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904
S.W.2d 656, 660 (Tex. 1995).
7. The primary variation of the evidence between the years was the amount of sales and damages,
not that different types of breaches occurred or that appellant's defense varied.
8. Issue sixteen is accordingly moot.
9. Appellant's first two arguments are overlapping and are overruled. In any event, upon remand, the
trial court and/or jury will be required to follow the new precedent set in Tony Gullo Motors I, L.P. v. Chapa, 
212 S.W.3d 299, 310 - 314(Tex. 2006). 
10. It is not at all clear that a presumptive proportionality could not be used where the parties agree the
attorney's fees award were largely based upon a fixed contingent fee contract and where, as here, the
percentages found by the jury are clear. Nor should Tatum apply when the record demonstrates the patent
contractual basis for the jury's findings. Cf. Tatum v. Preston Carter Co., 702 S.W.2d 186, 188 (Tex. 1986).